ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA         :    **SEALED INDICTMENT**
:
    - v. -                       :    **19 CRIM 802**
:
MENDEL ZILBERBERG, and           :
ARON FRIED,                      :
:
                Defendants.      :
:
- - - - - - - - - - - - - - - - x

**COUNT ONE**
**(Conspiracy to Commit Bank Fraud)**

The Grand Jury charges:

**Overview**

1. In or about 2009, a coconspirator not named herein ("CC-1") sought to obtain a fraudulent loan from Park Avenue Bank in Manhattan (the "Bank") in order to finance an investment in a home health care business with ARON FRIED, the defendant. However, knowing that CC-1 would not be credit-worthy and had a criminal record, FRIED and CC-1 used a straw borrower (the "Straw Borrower") for the loan application who was recruited by CC-1. To effectuate the scheme, FRIED and CC-1 partnered with MENDEL ZILBERBERG, the defendant, then a director of the Bank, who had the power to personally shepherd the fraudulent loan through the Bank's approval process and guard it from scrutiny. Together, the defendants concocted a false premise for the loan,

supported the application with false representations, and set up pass-through bank accounts to funnel the proceeds of the fraudulent loan to themselves. Based on the false representations made to the Bank and ZILBERBERG's involvement in the loan approval process, the Bank issued a $1.4 million loan to the Straw Borrower, which was quickly disbursed to the defendants. In total, ZILBERBERG received at least approximately $466,000 of the loan proceeds, FRIED received at least approximately $434,000 of the loan proceeds, and CC-1 received the remainder of the loan proceeds. The loan ultimately defaulted, resulting in a loss of over $1 million.

### Relevant Background

2. At all relevant times, the Bank was headquartered on Park Avenue in Manhattan, insured by the Federal Deposit Insurance Corporation ("FDIC"), and subject to the banking laws and regulations of the FDIC and the New York State Banking Department ("NYSBD"). The Bank was primarily a small business bank that, among other things, generally extended commercial lines of credit and maintained customer accounts.

3. At all relevant times, Regulation O of the Board of Governors of the Federal Reserve System ("Regulation O") applied to the Bank pursuant to the Federal Deposit Insurance Act of 1950, as amended, see 12 U.S.C. § 1828(j)(2), and section 337.3 of the FDIC's rules and regulations. Among other things,

Regulation O prohibits the transfer of proceeds of an extension of credit by the Bank to any insider of the Bank or related interests of the insider unless the extension of credit (i) is made on substantially the same terms as, and following credit underwriting procedures that are not less stringent than, those prevailing at the time for comparable transactions by the Bank with other persons who are not insiders; and (ii) does not involve more than the normal risk of repayment or present other unfavorable features.  See 12 C.F.R. §§ 215.3(f) and 215.4(a). In addition, Regulation O requires that the Bank maintain records of all extensions of credit, or transfers of extensions of credit, to insiders of the Bank.  See 12 C.F.R. § 215.8(b).

4.   At all relevant times, MENDEL ZILBERBERG, the defendant, was a director on the Board of Directors of the Bank (the "Board") and therefore an insider of the Bank under Regulation O.  See 12 C.F.R. § 215.2(h).  In addition, beginning in or about 2008, ZILBERBERG was on the Compliance Committee of the Board, which was responsible for implementing a compliance program that, among other things, ensured the Bank's compliance with Regulation O.  Pursuant to the Bank's credit policy in or about 2009, the Board must approve all extensions of credit subject to Regulation O.

5.   At all relevant times, MENDEL ZILBERBERG, the defendant, was a licensed attorney in New York State, and he was

3

the founding attorney of a law firm based in Brooklyn, New York (the "Zilberberg Law Firm"). Among other businesses, ZILBERBERG has owned and operated a company involved in recruiting, training, and preparing registered nurses from India for employment in the United States (the "Zilberberg Recruitment Firm") and a title insurance company (the "Zilberberg Insurance Company").

6.   At all relevant times, ARON FRIED, the defendant, worked in the home health care industry.

### The Straw Loan Scheme

7.   In or about June 2009, ARON FRIED, the defendant, and CC-1 began discussions regarding CC-1 becoming a partner in a home health care business ("Business-1") that FRIED was seeking to purchase. FRIED told CC-1, in substance and in part, that CC-1 would need to provide FRIED with money in order to become a partner in Business-1. CC-1 responded, in substance and in part, that CC-1 could get a loan through the Straw Borrower. FRIED subsequently obtained assistance for the loan from MENDEL ZILBERBERG, the defendant, who was able to facilitate getting a loan for the Straw Borrower from the Bank quickly.

8.   In order to provide the Straw Borrower with some reassurance that the loan the Straw Borrower would take out for CC-1 would be repaid, on or about June 5, 2009, CC-1 added the Straw Borrower to the deed for CC-1's house located in Brooklyn,

4

New York (the "Brooklyn Property"), for purported consideration of $10. ARON FRIED, the defendant, also told CC-1, in substance and in part, that the Straw Borrower needed to tell Bank personnel that the loan the Straw Borrower was seeking was for an investment in the Straw Borrower's own business if asked by Bank personnel.

9. On or about August 31, 2009, the Straw Borrower and his spouse applied for a $1.4 million unsecured line of credit (the "Loan") from the Bank. MENDEL ZILBERBERG, the defendant, engaged in the following communications, among others, regarding the Loan:

    a. On or about August 31, 2009, the same day the Straw Borrower applied for the Loan, ZILBERBERG emailed the loan officer handling the Loan application at the Bank ("Employee-1") stating, in substance and in part, that ZILBERBERG's office would be sending documents relating to the Loan shortly, and asking Employee-1 to "process asap." Also on the same day, ZILBERBERG emailed Employee-1 a net worth statement for the Straw Borrower (the "Net Worth Statement"), which misleadingly listed the Brooklyn Property as an asset solely belonging to the Straw Borrower with a market value of approximately $2.5 million. Later on the same day, Employee-1 emailed ZILBERBERG, inquiring, in substance and in part, "what should I put down as

5

the purpose of the loan?" ZILBERBERG replied: "To be able to take advantage of business opportunities?"

  b. On or about September 8, 2009, ZILBERBERG emailed Employee-1, indicating, in substance and in part, that Employee-1 should prioritize the Loan over others because it "is the important one."

  c. On or about September 10, 2009, ZILBERBERG emailed Employee-1 again regarding the Loan, asking, in substance and in part, "Are we on track. When will this fund." In a further email exchange the same day, Employee-1 informed ZILBERBERG, in substance and in part, that Employee-1 needed information on additional income for the Straw Borrower because the debt-service coverage ratio was too low.

  d. On or about September 11, 2009, an assistant to ZILBERBERG at the Zilberberg Recruitment Firm supplied Employee-1 with documents purporting to show additional income for the Straw Borrower to support the Loan, and stated, in substance and in part: "Mr. Zilberberg sends the following documents and asks if you would return reply with a funding date please."

  e. On or about September 13, 2009, ZILBERBERG emailed one of his employees at the Zilberberg Insurance Company ("Employee-2") to follow up on the Loan and indicated that it involved the Straw Borrower and ARON FRIED, the defendant.

    f. On or about September 14, 2009, Employee-2 emailed ZILBERBERG stating, in substance and in part, that Employee-1 said the Loan was out of Employee-1's hands and that ZILBERBERG "can get it moved along etc." ZILBERBERG responded "OK."

    10. The Bank's internal review of the Loan was summarized in an internal Bank document (the "Internal Review Memo"), which stated, among other things, that the purpose of the loan was "[t]o be used for working capital for business investments." The Internal Review Memo identified the Straw Borrower's primary business, which was different from Business-1, and noted that the Straw Borrower "stated that he needs funds to make additional investments, such as down payments on properties, etc. The flexibility of a line of credit will make these investments possible." The Internal Review Memo further falsely listed the Straw Borrower as "a client of Mendy Zilberberg, PAB Board member," even though the Straw Borrower was never a client of MENDEL ZILBERBERG, the defendant. The Loan application and the Internal Review Memo did not mention ARON FRIED, the defendant, CC-1, or Business-1, nor did it indicate that the Loan proceeds were to be transferred to FRIED, ZILBERBERG, and CC-1.

    11. On or about September 15, 2009, the Bank approved the Loan in an amount of $1.4 million to the Straw Borrower, even

7

though it was not recommended for approval by Employee-1. The sole signatories for the Loan were the Straw Borrower and his spouse. The Loan Agreement, which MENDEL ZILBERBERG, the defendant, reviewed and commented on, required, among other things, that all Loan proceeds be used solely for the Straw Borrower's business operations, unless specifically consented to the contrary by the Bank in writing.

12.  On or about September 16, 2009, MENDEL ZILBERBERG, the defendant, and Employee-2 exchanged emails discussing, in substance and in part, that the Loan involved money going from the Straw Borrower to CC-1, from CC-1 to ARON FRIED, the defendant, and from FRIED to the Zilberberg Recruitment Firm.

### The Defendants' Use of the Fraudulent Loan Proceeds

13.  On or about September 18, 2009, the Bank funded the Loan, depositing approximately $1.4 million into an account at the Bank held in the name of the Straw Borrower and his spouse. Proceeds from the loan were quickly distributed into bank accounts controlled by the defendants. For example:

   a.  On or about September 16, 2009, the same day a checking account was opened at the Bank in the name of the Straw Borrower and his spouse (the "Disbursement Account"), two new accounts were opened at the Bank in the name of ARON FRIED, the defendant (the "Fried Accounts").

b.    On or about September 18, 2009, immediately after the Loan was funded and approximately $1.385 million was deposited into the Disbursement Account, approximately $466,000 was transferred from the Disbursement Account to one of the Fried Accounts at the direction of MENDEL ZILBERBERG, the defendant.  The same day, FRIED transferred that $466,000 to a bank account at another bank held in the name of the Zilberberg Recruitment Firm, which was controlled by ZILBERBERG.

c.    On or about September 25, 2009, an additional approximately $300,000 was transferred from the Disbursement Account to one of the Fried Accounts.

d.    On or about October 29, 2009, an additional $70,000 was transferred from the Disbursement Account to one of the Fried Accounts.

e.    On or about November 20, 2009, an additional approximately $30,000 was transferred from the Disbursement Account to another Bank account held in the name of a company over which CC-1 exercised control (the "CC-1 Account").

f.    On or about December 1, 2009, an additional $475,000 was transferred from the Disbursement Account to the CC-1 Account.

g.    On or about December 2, 2009, a transfer of $450,000 was made from the CC-1 Account to one of the FRIED Accounts.

h.  Between on or about December 2, 2009 and on or about December 8, 2009, additional transfers totaling approximately $445,000 were made from the FRIED Accounts to accounts held at another bank in the name of the Zilberberg Law Firm.  Of this approximately $445,000 that was transferred to the Zilberberg Law Firm, approximately $405,000 was transferred in connection with FRIED's purchase of Business-1, which was facilitated by ZILBERBERG, and the remaining approximately $40,000 was transferred to the Zilberberg Recruitment Firm.

14.  MENDEL ZILBERBERG, the defendant, did not disclose the true structure and risks of the Loan or his financial interest in the Loan to the Bank, even though he was aware of the requirements under Regulation O that apply to extensions of credit and transfers of extensions of credit to insiders of the Bank like himself.

### The Default of the Loan

15.  On or about March 12, 2010, the Superintendent of Banks for New York State closed the Bank, citing ineffective management and inadequate capital, and appointed the FDIC as receiver.  The Loan and other Bank obligations were assumed by a successor financial institution ("Bank-2").

16.  By in or around October 2010, the Loan fell into default.  As a result, Bank-2 and the FDIC, as receiver, suffered a combined loss of approximately $1,066,853.

17.  In or about 2011, Bank-2 sued the Straw Borrower for collection on the Loan.  CC-1 and ARON FRIED, the defendant, attempted to negotiate a settlement of the Loan with Bank-2 on behalf of the Straw Borrower through an intermediary.  In connection with those settlement negotiations, false representations were made to Bank-2 to maintain, in substance and in part, the false impression that the Straw Borrower was the actual borrower on Loan and that the Straw Borrower used the Loan proceeds for the Straw Borrower's business, as required by the Loan agreement.

## STATUTORY ALLEGATIONS

18.  From at least in or about June 2009 through in or about October 2013, in the Southern District of New York and elsewhere, MENDEL ZILBERBERG and ARON FRIED, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344, to wit, ZILBERBERG and FRIED agreed to make misrepresentations to the Bank in order to cause the Bank to issue the Loan to the Straw Borrower.

19.  It was a part and object of the conspiracy that MENDEL ZILBERBERG and ARON FRIED, the defendants, and others known and unknown, willfully and knowingly would and did execute a scheme and artifice to defraud a financial institution, to wit, the

Bank, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3293.)

## COUNT TWO
### (Bank Fraud)

The Grand Jury further charges:

20. The allegations set forth in paragraphs 1 through 17 are realleged and incorporated by reference as if fully set forth herein.

21. From at least in or about June 2009 through at least in or about October 2013, in the Southern District of New York and elsewhere, MENDEL ZILBERBERG and ARON FRIED, the defendants, willfully and knowingly did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, to wit, the Bank, the deposits of which were then insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, ZILBERBERG and FRIED engaged in a scheme to cause the Bank to issue the Loan to

the Straw Borrower by means of false and fraudulent pretenses and representations.

(Title 18, United States Code, Sections 1344, 3293 and 2.)

## COUNT THREE
### (Conspiracy to Make False Statements to a Bank)

The Grand Jury further charges:

22.   The allegations set forth in paragraphs 1 through 17 are realleged and incorporated by reference as if fully set forth herein.

23.   From at least in or about June 2009 through at least in or about 2011, in the Southern District of New York and elsewhere, MENDEL ZILBERBERG and ARON FRIED, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, making false statements to a bank in violation of Title 18, United States Code, Section 1014.

24.   It was a part and an object of the conspiracy that MENDEL ZILBERBERG and ARON FRIED, the defendants, willfully and knowingly made false statements and reports and overvalued land, property, and security, for the purpose of influencing the action of the Bank, an institution the accounts of which were insured by the FDIC, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement,

13

commitment, and loan, to wit, for the purpose of obtaining the Loan, ZILBERBERG and FRIED agreed to misrepresent to the Bank, among other things, the actual borrower's identity and the actual purpose and use of the Loan, in violation of Title 18, United States Code, Section 1014.

25. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts were committed in the Southern District of New York and elsewhere:

a. On or about June 5, 2009, before the Loan was funded, CC-1 added the Straw Borrower to the deed for the Brooklyn Property for purported consideration of $10. After the Loan was funded, on or about February 17, 2010, CC-1 arranged for the Straw Borrower to be removed from the deed for the Brooklyn Property.

b. On or about August 31, 2009, MENDEL ZILBERBERG, the defendant, sent an email to a Bank employee, Employee-1, that proposed falsely representing to the Bank that the purpose of the Loan was to enable the Straw Borrower to take advantage of business opportunities.

c. On or about September 16, 2009, two accounts were opened at the Bank in the name of ARON FRIED, the defendant, in order to transfer over $900,000 of the funds

fraudulently obtained from the Loan to FRIED and the Zilberberg Recruitment Firm.

(Title 18, United States Code, Sections 371 and 3293.)

## COUNT FOUR
### (Making False Statements to a Bank)

The Grand Jury further charges:

26. The allegations set forth in paragraphs 1 through 17 and paragraph 25 are realleged and incorporated by reference as if fully set forth herein.

27. From at least in or about June 2009 through at least in or about 2011, in the Southern District of New York and elsewhere, MENDEL ZILBERBERG, the defendant, did knowingly make false statements and reports and overvalue land, property, and security, for the purpose of influencing the action of the Bank, an institution the accounts of which were insured by the FDIC, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, to wit, for the purpose of obtaining the Loan, ZILBERBERG made false statements to the Bank regarding, among other things, the following: (a) that the borrower on the Loan was the Straw Borrower, when in fact the actual borrowers and beneficiaries of the Loan were ZILBERBERG, ARON FRIED, the defendant, and CC-1; and (b) that the purpose of the Loan was for business

15

investments by the Straw Borrower, when in fact the actual purpose of the Loan was to benefit ZILBERBERG, FRIED, and CC-1.

(Title 18, United States Code, Sections 1014, 3293 and 2.)

## COUNT FIVE
### (Making False Statements to a Bank)

The Grand Jury further charges:

28. The allegations set forth in paragraphs 1 through 17 and paragraph 25 are realleged and incorporated by reference as if fully set forth herein.

29. From at least in or about June 2009 through at least in or about 2011, in the Southern District of New York and elsewhere, ARON FRIED, the defendant, did knowingly make false statements and reports and overvalue land, property, and security, for the purpose of influencing the action of the Bank, an institution the accounts of which were insured by the FDIC, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, to wit, for the purpose of obtaining the Loan, FRIED recruited and caused MENDEL ZILBERBERG, the defendant, to make false statements to the Bank regarding, among other things, the following: (a) that the borrower on the Loan was the Straw Borrower, when in fact actual borrowers and beneficiaries of the Loan were ZILBERBERG, FRIED, and CC-1; and (b) that the purpose of the Loan was for business investments by the Straw Borrower,

16

when in fact the actual purpose of the loan was to benefit ZILBERBERG, FRIED, and CC-1.

(Title 18, United States Code, Sections 1014, 3293 and 2.)

## COUNT SIX
### (Embezzlement and Misappropriation of Bank Funds)

The Grand Jury further charges:

30. The allegations set forth in paragraphs 1 through 17 and paragraph 25 are realleged and incorporated by reference as if fully set forth herein.

31. From at least in or about June 2009 through at least in or about 2011, in the Southern District of New York and elsewhere, MENDEL ZILBERBERG, the defendant, being an officer, director, agent and employee of, and connected in a capacity with an insured bank, did embezzle, abstract, purloin and willfully misapply the moneys, funds, and credits of such bank, to wit, ZILBERBERG, as a director and agent of the Bank, embezzled and misapplied funds from the Bank by causing the Bank to issue the Loan to the Straw Borrower for the Straw Borrower to make business investments, when in fact ZILBERBERG, ARON FRIED, the defendant, and CC-1 received the Loan proceeds for their personal use.

(Title 18, United States Code, Sections 656, 3293 and 2.)

**FORFEITURE ALLEGATION**

32.  As the result of committing the offenses alleged in Counts One through Six of this Indictment, MENDEL ZILBERBERG and ARON FRIED, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

Substitute Assets Provision

33.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

>(Title 18, United States Code, Section 982;
>Title 21, United States Code, Section 853; and
>Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MENDEL ZILBERBERG, and
ARON FRIED,

Defendants.

## INDICTMENT

19 Cr.

(18 U.S.C. §§ 371, 656, 1014, 1344,
1349, and 3293.)

GEOFFREY S. BERMAN
United States Attorney

_____
Foreperson

11/8/19

Filed Indictment under seal
Arrest warrant issued

USMJ Gabriel Gorenstein